UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PENNY FORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-00485-SEB-DKL |
| CAROLYN W. COLVIN Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Penny Ford ("Ford") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying Ford's application for disability insurance benefits ("DIB"). The Honorable Sarah Evans Barker, District Judge, designated this Magistrate Judge, under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), to issue a report and recommendation on the request. [Dkt. 14.] For the reasons set forth below, the undersigned recommends the Commissioner=s decision be **REVERSED** and **REMANDED**.

### I.    BACKGROUND

**A. Procedural History**

Ford filed an application for DIB on February 26, 2010, alleging an onset of disability of January 4, 2008. [Dkt. 13-2 at 21.] Ford's application was denied initially

on July 6, 2010, and upon reconsideration on August 30, 2010. *Id.* Ford requested a hearing, which was held via videoconference on March 29, 2012, before Administrative Law Judge JoAnn L. Anderson ("ALJ"). Ford appeared in Indianapolis, Indiana with counsel; the ALJ presided from Falls Church, Virginia. The ALJ denied Ford's application on November 14, 2011. [Dkt. 13-2 at 18.] The Appeals Council denied Ford's request for review of the ALJ's decision on January 29, 2013, making the ALJ's decision final for purposes of judicial review. [Dkt. 13-2 at 2.] Ford filed her Complaint with this Court on March 22, 2013. [Dkt. 1.]

**B. Factual Background and Medical History**

Ford was born on June 18, 1963, and was 48 years old at the time of the hearing. She has past relevant work as mold machine operator, forklift operator, trim press operator and karaoke DJ. Although her most recent consistent job ended after accepting a buyout in 2008, Ford worked intermittently as a karaoke DJ until 2010. Her earnings qualified as substantial gainful employment throughout 2009. Ford alleges an onset of disability date of January 4, 2008.

The ALJ found Ford suffers from the severe impairments of chronic obstructive pulmonary disease ("COPD"), degenerative disc disease of the lumbar spine, and fibromyalgia. She also alleges depression. Although Ford did not specifically allege obesity in her application, she testified that she is five-foot-one-inch tall and 200 pounds. Ford testified that she was a two-pack a day smoker for 30 years, but cut back to two cigarettes a day prior to the hearing. The primary reason she believes she is

unable to work is her difficulty breathing, diagnosed as COPD. She stated that she feels like she is "being suffocated all the time." [Dkt. 13-2 at 59.]

As Ford and the ALJ thoroughly summarized the medical records, the Court will only cite to the portions relevant to the issues on which Ford requests review.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

Step One: Is the claimant currently employed;

Step Two: Does the claimant have a severe impairment or combination of impairments;

Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

Step Four: Can the claimant perform his past relevant work; and

Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four.

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

### B. Standard for Judicial Review

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every

piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. DISCUSSION

Ford claims the ALJ committed two errors that require reversal of the Commissioner's decision. Specifically, Ford asserts the ALJ: (1) improperly discredited her most recent pulmonary function test results; and (2) failed to consider Ford's obesity when determining she was not disabled.

**A. Pulmonary Function Test**

Ford first argues the ALJ improperly discounted her most recent pulmonary function test ("PFT"). Specifically, the ALJ found that Ford's "PFT's were inconsistent and there is no evidence to establish listing-level severity for a continuous period of not less than 12 months." [Dkt. 13-2 at 28.]

Listing 3.02 for impairments involving chronic pulmonary insufficiency explains that an individual's impairment is of listing-level severity if an individual of Ford's height (61 inches) has an $FEV_1$ equal to or less 1.15 OR and FVC equal to or less than 1.35. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.02. Although Ford was consistently diagnosed with COPD, there were only three sets of PFT's in the medical record. Ford tested below listing level in August 2006 and in May 2010. In August 2011 (two months after the hearing), however, a PFT demonstrated an $FEV_1$ of .68 and an FVC of 1.15. The ALJ concluded this single listing-level test result was not sufficient

evidence upon which to base a finding of disability.  And with that point, the Court agrees.  However, in the absence of subsequent testing, the existence of a single listing-level test result also precludes a finding that Ford can spend nearly eight hours a day, every day, on her feet working as required by the "light work" RFC.

ALJs have a duty to develop a full and fair record and must order supplemental testing when the gap in the medical record is significant and prejudicial.  *Nelson v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).  Here the gap is significant because the most recent PFT satisfied Listing 3.02, and the pattern of scores and symptoms reasonably could demonstrate her COPD was increasing in severity. Without additional testing, the ALJ cannot reasonably conclude Ford was physically able to perform at the "light work" RFC.  *See e.g. Warren v. Colvin*, 2014 WL 3409697 (7th Cir. 2014) (finding that in declining to order an IQ test, the ALJ failed to develop the record necessary to make a decision on the claimant's intellectual limitations).  In addition, Ford need not demonstrate that she has *already* experienced twelve continuous months of disability. The durational requirement may likewise be met if the impairment "can be *expected* to last for at least the required 12–month period." SSR 82–52 (emphasis added).  But the ALJ does not conduct this analysis.  The ALJ points to nothing in the record to support a conclusion that Ford's COPD would improve; nor does he conclude there was too little evidence to determine whether Ford's COPD would continue for more than 12 months after the August 2011 PFT.  He simply does not discuss whether the COPD could last for twelve months.

The logical bridge was not sound here. Rather than discrediting Ford's most recent PFT, the ALJ was obligated to seek additional pulmonary function evidence to fairly assess her ability to work and whether Ford's condition was expected to continue at listing-level severity.

**B. Obesity**

Ford also argues that the ALJ failed to consider the effect of her obesity in combination with her other impairments in his RFC analysis. Ford testified that she Her latest medical record shows that she weighed 200 pounds and was five-foot one-inch tall. She contends that the ALJ did not consider how obesity could have contributed to or exacerbated her COPD. But any error in failing to mention obesity is harmless if the claimant did not explain to the ALJ how her obesity aggravated her condition and rendered her disabled. *See Prochaska v. Barnhart,* 454 F.3d 731, 737 (7th Cir. 2006); *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004). Ford's "mere assertion that she is obese did not satisfy that burden." *Mueller v. Colvin,* 2013 WL 1701053, *3–4 (7th Cir. 2013).

When the ALJ adopts the limitations recommended by doctors who were aware of the claimant's obesity, a failure to mention obesity in a decision does not constitute reversible error. *See Skarbek,* 390 F.3d at 504 (finding that "although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions"). However, as this case will be remanded to allow the ALJ to further explore the severity of Ford's COPD, the ALJ should also expressly take her obesity into account when formulating her RFC.

7

### IV. <u>Conclusion</u>

The undersigned Magistrate Judge recommends the ALJ's decision be reversed primarily because he failed to properly obtain and evaluate the evidence. It is the job of the ALJ, not the court, to weigh the evidence, resolve conflicts, and determine whether the claimant is disabled. *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1037 (E.D. Wis. 2004). Therefore, the Magistrate recommends the Commissioner's decision be **REVERSED** and **REMANDED** with instructions to: (1) obtain additional evidence concerning Ford's pulmonary function to evaluate whether the severity of her COPD meets or equals Listing 3.02; (2) fully account for Ford's impairments, including COPD and obesity, when determining her RFC.

### Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

*v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses. No replies will be allowed.**

Date: 07/24/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles Julian Myers
cmyers7943@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov