UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PENNY FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-00485-SEB-DKL |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER MODIFYING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Penny Ford is not entitled to disability insurance benefits ("DIB"). The Administrative Law Judge ("ALJ") denied Ms. Ford's application for DIB after concluding that there are jobs that exist in significant numbers in the national economy that she can perform. This case was referred to Magistrate Judge LaRue for initial consideration. On July 24, 2014, Magistrate Judge LaRue issued a report and recommendation that the Commissioner's decision be reversed and remanded because the ALJ failed to properly obtain and evaluate the evidence. This cause is now before the Court on the Commissioner's Objections to the Magistrate Judge's Report and Recommendation. For the reasons set forth below, the Commissioner's objections are well taken and her decision is **AFFIRMED**.

## Standard of Review

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368–369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been

raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759-61 (7th Cir. 2009).

**Factual Background**

There is no dispute related to Ms. Ford's medical records. Those records are thoroughly summarized by the ALJ, the parties, and the Magistrate Judge. Ms. Ford was 48 years old at the time of the hearing. She previously worked as a mold machine operator, forklift operator, trim press operator and karaoke DJ. Ms. Ford's earnings qualified as substantial gainful employment through 2009. She alleges an onset of disability as of January 4, 2008.

The ALJ found that Ms. Ford suffers from the severe impairments of chronic obstructive pulmonary disease ("COPD"), degenerative disc disease of the lumbar spine and fibromyalgia. Ms. Ford also alleged depression. Ms. Ford did not specifically allege obesity in her application, but testified that she is 5'1" and 200 pounds. Although Ms. Ford testified that she was a two-pack a day smoker for 30 years, she cut back to two cigarettes a day prior to the hearing. Ms. Ford believes she is unable to work because she has difficulty breathing (COPD).

**Discussion**

Only two issues were raised on appeal by the Plaintiff. Plaintiff complains that the ALJ erred in discrediting Ms. Ford's most recent pulmonary function test ("PFT") and that the ALJ erred in not considering Ms. Ford's obesity. In her Report and Recommendation, Magistrate Judge LaRue concluded that the Commissioner's decision denying disability should be reversed and remanded. The Magistrate Judge found that the ALJ improperly

3

discredited Ms. Ford's most recent PFT results and should have more fully developed the record as a result of Ms. Ford's latest PFT. Because the Magistrate Judge recommended remand, she also recommends that the ALJ explicitly consider Ms. Ford's obesity to make a disability determination. Defendant objects to the Magistrate Judge's Report and Recommendation on the basis that "substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal a listing and her finding that Plaintiff could perform a limited range of light work." [Dkt. No. 25 at1.] Plaintiff did not respond to Defendant's objections. We will discuss each in turn.

**A.     Ms. Ford's Most Recent PFT and Listing 3.02.**

The ALJ found that Ms. Ford suffers from severe impairments of COPD, degenerative disc disease of the lumbar spine and fibromyalgia. The ALJ found that "the medical evidence of record establishes COPD, but the evidence of the claimant's impairment does not meet or equal the severity of the listing section 3.02." [R. at 24-25.] Listing 3.02 for impairments involving chronic pulmonary insufficiency explains that an individual's impairment is of listing-level severity if an individual of Ms. Ford's height (61 inches) has an $FEV_1$ equal to or less than 1.5 OR and FVC equal to or less than 1.35. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.02. The parties agree that Plaintiff had three pulmonary function tests (PFTs), the results of which were:

4

| Date | FVC | FEV$_1$ |
|---|---|---|
| August 9, 2006 | 1.77 | 1.29 |
| May 27, 2010 | 2.34 | 1.55 |
| August 22, 2011 | .68 | 1.07 |

[R. at 25, 323-24 (August 9, 2006 results), 387-94 (May 27, 2010 results), 503 (August 22, 2011 results).] Although Ford's August, 2006 FEV$_1$ was below the threshold 1.35 (and may have satisfied Listing 3.02), the ALJ found that Ms. Ford's August 9, 2006 PFT was before the alleged onset date when she was engaged in SGA, and it was conducted after she was treated for complaints of cough and dyspnea.[1] With respect to Ms. Ford's May 27, 2010 PFT, the ALJ found those results (FVC at 2.34 and FEV$_1$ at 1.55) to be above the threshold of Listing 3.02 (1.35 and 1.5, respectively).

The ALJ discounted Ms. Ford's August 22, 2011 PFT test because "the PFT did not determine her capacity, show that these results were reproducible, or that these scores occurred on *three occasions*." [R. at 25 (citing (Exhibit 21F) (emphasis added).] The Magistrate Judge agreed that "this single listing-level test result was not sufficient evidence upon which to base a finding of disability." [Dkt. No. 24 at 5-6.] We agree that the ALJ properly discounted Ms. Ford's latest PFT test, but not for the reasons stated by the ALJ or the Magistrate Judge.

Section 3.00E of 20 CFR Pt. 404, Subpt. P, App. 1 ("Section 3.00E") contains very specific, multiple requirements for documentation of pulmonary function testing. Those

---

[1] In addition, the August 2006 PFT lacks some of the documentation required by Section 3.00E. [*Compare* R. at 387-94 *with* R. at 323-24.]

5

requirements include but are not limited to a requirement that the $FEV_1$ and FVC reported "should represent the largest of at least three satisfactory forced expiratory maneuvers. Two of the satisfactory spirograms should be reproducible for both pre-brochodilator tests and, if indicated, and post-bronchodilator tests," and should include a statement of "the individual's ability to understand directions as well as his or her effort and cooperation in performing the pulmonary function tests." Section 3.00E. Ms. Ford's latest PFT, discounted by the ALJ, does not meet the documentation and testing requirements of Section 3.00.

> Ms. Ford's August 22 PFT states:
>
> ```
> EXAMINATION: PULMONARY FUNCTION TEST
>   CPT: Mod;
>   RIS Order: 90009  (KCP) (0012) MS4 Order:002- 1400027
>
> COMPLETED: Aug 22 2011  4:19PM
> TECH INITIALS: JXM
>   Comments:
>
> FULL RESULT:
>
> INTERPRETATION: Pulmonary function test shows severe obstruction with
> air trapping and diffusion capacity was not determined.
>
> The FEV1 is 0.68, which is 28% of predicted, FVC 1.07, which is 37% of
> predicted, total lung capacity by dilution 4.35, which is 164% of
> predicted, residual volume 3.19, which is 203% of predicted. Diffusion
> capacity is not determined.
>
> IMPRESSION:
>
> As above.
> ```

[R. at 503.] These results do not meet the PFT documentation criteria of Section 3.00E. There is no statement of Ms. Ford's "ability to understand directions" or her effort and cooperation in performing the PFT. These results do not demonstrate that the PFT was the

6

result of "the largest of at least three satisfactory forced expiratory maneuvers." The above results do not contain two satisfactory spirograms that are reproducible for both pre- and post-bronchodilator tests. Indeed, when contrasted with Ms. Ford's non-qualifying PFTs, the information missing from Exhibit 21F is obvious. [*Compare* R. at 503 *with* R. at 323-24 (August 9, 2006 results), 387-94 (May 27, 2010 results) ("Did claimant understand the test instructions? yes. Did claimant exert maximal effort? Yes.").] For these reasons, the ALJ was correct in discounting Plaintiff's August 22, 2011 PFT. *See Sradlin v. Secretary of Health & Human Services*, 857 F. Supp. 1215, 1217 (S.D. Ohio 1993) (finding that because claimant's PFT "did not include post-bronchodilator values; nor is there a spirometric tracing," among other things, it was "impossible to lend [the results] credence").[2] Ms. Ford has not shown that she satisfies Listing 3.02 with her most recent PFT.

---

[2] The Magistrate Judge recommends that we remand this case because the ALJ did not conduct an analysis to determine if Ms. Ford's disability could "be expected to last for at least the required 12-month period." [Dkt. No. 24 at 6 (citing SSR 82-52).] The Magistrate Judge noted that Ms. Ford need not demonstrate that she already experienced twelve months of disability, but can meet the durational requirement by showing that the impairment can be expected to last for twelve months in the future. The ALJ found that "there is no evidence to establish listing level severity for a continuous period of not less than 12 months" without explicitly stating whether she was looking at twelve months in the past or future. [R. at 27.] Although Ms. Ford argued that "there is nothing in the record to suggest this [impairment] would not continue for 12 months" [Dkt. 16 at 14], it is claimant's burden to prove her condition meets a listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (citing *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir.1993); *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir.1991); *Steward v. Bowen*, 858 F.2d 1295, 1297 n.2 (7th Cir.1988)) ("To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment. The claimant bears the burden of proving his condition meets or equals a listed impairment."). Yet, even if we infer that the ALJ's finding only looked to the past twelve months, any error would be harmless because the August 2011 PFT did not satisfy the Listing requirements in August, let alone for twelve months in the past or future.

Although the Magistrate Judge agrees that the Plaintiff does not satisfy Listing 3.02, she recommends that the ALJ's decision be remanded because it is not supported by substantial evidence. The Magistrate Judge found a gap in the record evidence between Plaintiff's most recent PFT and the ALJ's conclusion that Ms. Ford "was physically able to perform at the 'light work' RFC." [Dkt. No. 24 at 6.] We find that the Magistrate Judge's analysis was confused by the parties' and ALJ's misunderstanding of the requirements of Listing 3.02 and Section 3.00E.

The ALJ uses the word "occasions" to describe the requirement "of at least three satisfactory forced expiratory maneuvers" contained in Section 3.00E. [*See* R. at 25.] This word choice suggests that the ALJ believed the PFT must be performed on three separate days or separate "occasions" to satisfy Section 3.00E and Listing 3.02. This interpretation was further advanced by the Defendant who argued that "[t]he August 2011 PFT report gives no indication that the results were repeated at any other point in time." [Dkt. No. 21 at 16.] Defendant's argument may be read to confirm the ALJ's use of the word "occasion" in interpreting Section 3.00E's requirements that the $FEV_1$ and FVC "should represent the largest of at least three satisfactory forced expiratory maneuvers."

Yet, this is not the case. The "three satisfactory forced expiratory maneuvers" contemplated by Section 3.00E occur during one PFT. [*See* R. at 25, 323-24 (August 9, 2006 results), 387-94 (May 27, 2010 results).] The requirement in Section 3.00E that the PFT results be "reproducible" relates to these (at a minimum) three, one-second forced expiratory volume (FEV1) and forced vital capacity (FVC). Section 3.00E explains that a value is "reproducible if it does not differ from the largest value by more than 5 percent or

8

0.1 L, whichever is greater." The use of the word "reproducible" does not mean that the PFT needs to be repeated on three separate "occasions" to prove a listing-level impairment as the ALJ inferred. The Magistrate Judge appears to adopt the ALJ's use of the "occasion" by stating that "the most recent PFT satisfied Listing 3.02." [Dkt. No. 24 at 6.] The Magistrate Judge's recommendation that this case be remanded so that the ALJ can consider additional PFTs to corroborate the August 22 PFT is based on the ALJ's misunderstanding of Section 3.00E's requirements. Even if Ms. Ford had additional PFTs, the August 22 results still would not satisfy Listing 3.02's requirements and was properly discounted by the ALJ.[3]

Had Section 3.00E required three separate PFTs on three separate "occasions", the ALJ may have been required to more fully develop the record before determining the severity of Plaintiff's impairment. However, because the August 21, 2011 PFT does not satisfy the robust documentation and development standards of Section 3.00E, we find no reason for the ALJ to reconsider the evidence or further develop the record. "[H]ow much evidence to gather is a subject on which [the courts] generally respect the [Commissioner's] reasoned judgment. *Luna v. Shalala*, 22 F.3d 687, 692-93 (7th Cir. 1994). Moreover, "the burden is on the claimant to introduce some objective evidence that further development of the record is required." *Poyck v. Astrue*, 414 Fed. Appx. 859, 861 (7th Cir. 2011). Any error in the ALJ's understanding of the requirements of Listing 3.02 or Section 3.00E is

---

[3] We do not find that the ALJ was "playing doctor" as Ms. Ford argues. [*See* Dkt. No. 16 at 11-12.] The August 22 PFT was incomplete and lacking the documentation and components required by Section 3.00E to satisfy Listing 3.02. The August PFT alone could not be the basis for finding Ms. Ford disabled.

9

harmless because Plaintiff's August 21, 2011 PFT does not satisfy Listing 3.02. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."). Although the ALJ may have misunderstood the requirements of Section 3.00E, she properly discounted the August 21 PFT, and thus, would reach the same result on remand.

The ALJ thoroughly considered all of the medical evidence. She recounted Ms. Ford's history of medical care, including hospital visits. The ALJ found that Ms. Ford "has impairments, which cause some degree of functional loss. However, the medical evidence does not support a finding that she can do no work." [R. at 27.] The ALJ's decision is supported by the evidence. "We neither reweigh the evidence nor substitute our own judgment in place of the ALJ, . . . ." *Yurt v. Colvin*, 758 F.3d 850, 856-57 (7th Cir. 2014).

Plaintiff argued that her condition has been worsening since 2008. She cites to her emergency room visits since May 27, 2010. [*See* Dkt. No. 16 at 12-13.] The ALJ specifically mentions Ms. Ford's March 2011, April 2011, June 2011, and August 2011 emergency room and doctor visits. [R. at 26-27.] Although the ALJ did not specifically mention Exhibit 12F, Ms. Ford's July 31, 2010 emergency room visit, it is clear that the ALJ considered this line of evidence in her decision. *See Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue,* 676 F.3d 586, 592 (7th. Cir. 2012)) ("An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion."). It is clear that the ALJ considered the possibility that Ms. Ford's COPD was worsening as Plaintiff argues, but the ALJ concluded

that "claimant's treatment shows prescription medication, weight management, and smoking cessation to help alleviate her symptoms." [R. at 27.] Plaintiff points to no evidence in the record that the ALJ failed to consider. Ms. Ford simply disagrees with the weight afforded to the evidence by the ALJ. This is not a sufficient basis for remand.

B.     **The ALJ's Consideration of Plaintiff's Obesity Was Appropriate.**

No objection was made to the Magistrate Judge's finding that the ALJ did not err in her consideration of Ms. Ford's obesity. The Magistrate Judge found that "Ford did not specifically allege obesity in her application." [Dkt. No. 24 at 2.] The Magistrate Judge found that "any error in failing to mention obesity is harmless if the claimant did not explain to the ALJ how her obesity aggravated her condition and rendered her disabled." [*Id.* at 7 (citing *Prochaska v. Barnhard*, 454 F.3d 731, 737 (7th Cir, 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).] Moreover, the Magistrate Judge found that "[w]hen the ALJ adopts the limitations recommended by doctors who were aware of the claimant's obesity, a failure to mention obesity in a decision does not constitute reversible error." [*Id.* at 7 (citing *Skarbek*, 390 F.3d at 504 (finding that "although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.")).] We agree with the Magistrate Judge's analysis to which no objection was made. *See* Fed. R. Civ. P. 72(b); *Schur*, 577 F.3d at 759-61 (holding that the district court can defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party). Because we find that the Commissioner's decision related to Listing 3.02 is affirmed, the Magistrate Judge's recommendation with regard to the ALJ's reconsideration of Ms. Ford's obesity is no

11

longer applicable.  The ALJ's failure to specifically mention Ms. Ford's obesity is not reversible error.

## Conclusion

We find that Defendant's objections to the Report and Recommendation of the Magistrate Judge have merit.  Therefore, Defendant's objections are SUSTAINED.  We do not adopt the recommendations set forth in the Magistrate Judge's Report and Recommendation as to Defendant's first objection related to Listing 3.02.  We do adopt the reasoning of the Magistrate Judge's recommendation with respect to the issue of Ms. Ford's obesity.  The final decision of the Commissioner that Penny C. Ford was not entitled to Disability Insurance Benefits based on her application filed on February 26, 2010, is **AFFIRMED**.

IT IS SO ORDERED.

Date: 9/29/2014

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Charles Julian Myers
cmyers7943@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov